J632silA

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JONATHAN SILVER,

                Plaintiff,              New York, N.Y.

           v.                           19 Civ. 2997(JSR)

PAYWARD INC., et al.,

                Defendants.

------------------------------x         Argument

                                        June 3, 2019
                                        4:45 p.m.

Before:

                HON. JED S. RAKOFF,

                                        District Judge


                    APPEARANCES


THE BRAUNSTEIN LAW FIRM, PLLC
     Attorneys for Plaintiff
BY:  MICHAEL L. BRAUNSTEIN


DAVID S. SILVER
     Attorney for Plaintiff


PIERCE BAINBRIDGE BECK PRICE & HECHT, LLP
     Attorneys for Defendants
BY:  CHRISTOPHER N. LaVIGNE
```

1              (Case called)
2              MR. BRAUNSTEIN:  Good afternoon, your Honor.  Michael
3     Braunstein, the Braunstein Law Firm, for plaintiff.
4              MR. SILVER:  Along with co-counsel David Silver, your
5     Honor.
6              THE COURT:  Good afternoon.
7              MR. LaVIGNE:  Christopher LaVigne, from Pierce
8     Bainbridge, for defendant Payward, Inc., Infinitude, and
9     Payward Ventures.
10             THE COURT:  Good afternoon.
11             We are here for two things.  The first is the motion
12    to dismiss, so let me hear from moving counsel, but use the
13    microphone at the lectern, please.
14             MR. LaVIGNE:  Thank you, your Honor.  Can you hear me?
15             THE COURT:  Yes.
16             MR. LaVIGNE:  We see this as a pretty straightforward
17    case.
18             THE COURT:  Well, you submitted all sorts of stuff
19    that went well beyond anything in the complaint and you are
20    asking the court to rely on this stuff.  For example, you
21    submitted a declaration from your in-house counsel which
22    states, in substance, that the plaintiff's allegations are
23    false.  Why in the world would that ever support a motion to
24    dismiss?
25             MR. LaVIGNE:  Your Honor, the plaintiff in this case

1     relied in part on documents and selectively quoted from
2     documents --
3              THE COURT:  She didn't -- there is nothing in her
4     declaration that is a document.  It's a simple declaration
5     that, you state in your brief, "provides critical details
6     absent from the complaint."  That may be or may not be, but I
7     know of no decision of any court anywhere that allows a
8     witness's sworn affidavit or in this case declaration of what
9     he or she considers to be the true facts to be a basis for
10    dismissing a complaint on the face of the complaint.
11             MR. LaVIGNE:  Your Honor, that is fine.  We don't in
12    fact need Ms. Merkadeau's declaration.
13             THE COURT:  Then why the heck did you submit it?
14             MR. LaVIGNE:  Because we believe that this case was
15    filed, quite frankly, for -- I'm not really sure the reason it
16    was filed, but this case was filed instead of pursuing
17    finishing settlement negotiations, which were ongoing, for the
18    same exact amount that was being contemplated to be paid.  If
19    plaintiff wanted to continue settlement negotiations, we would
20    not be here right now.
21             THE COURT:  And what does that have to do with a
22    motion to --
23             MR. LaVIGNE:  That --
24             THE COURT:  -- dismiss?  So what you are telling me is
25    you submitted the declaration and you are making an argument

J632silA

1   now about why you think, as a practical matter or on the
2   equities or on what you think are the facts, the case should
3   not be here.  None of that is relevant to a 12(b)(6) motion is
4   it.
5           MR. LaVIGNE:  I think it is relevant in light of
6   *Winston*.  It doesn't matter, in our view, whether this is a
7   12(b)(6) or in other cases a motion to enforce a settlement
8   agreement.  It is our view that the complaint essentially is a
9   motion to enforce a settlement agreement and that, under
10  *Winston*, all of these facts are considered.
11          THE COURT:  Well that, of course, only that goes to
12  Count Two, right?
13          MR. LaVIGNE:  No.  It goes to the breach of the
14  settlement agreement, also.
15          THE COURT:  Well, let's see.
16          MR. LaVIGNE:  In fact, paragraph --
17          THE COURT:  You say that if an oral agreement was
18  made, it would be unenforceable because of the four factors
19  outlined in *Winston*, right?
20          MR. LaVIGNE:  That's correct, your Honor.
21          THE COURT:  And the first factor is whether there has
22  been an express or implied reservation of the right not to be
23  bound in the absence of a writing, and you say that the
24  language in the letter that is part of the complaint that "the
25  company expects to supplement this letter after further

1  discussions with you with additional terms to be mutually
2  agreed upon" is the same as an indication of an intent only to
3  be bound by a written agreement?
4        MR. LaVIGNE:  That's correct, your Honor.  It is our
5  view that we -- that *Winston* applies to both claims because the
6  Second Circuit --
7        THE COURT:  I'll take it as relevant to both claims
8  for the purpose on argument, but I'm asking you what in the
9  language that I just read shows that a writing, a supplemental
10  writing, was contemplated as opposed to just further oral
11  agreement or an oral agreement?
12        MR. LaVIGNE:  The first factor in *Winston* asks whether
13  there is an express or an implied reservation of a right not to
14  be bound in absence of a written agreement.  It is our view
15  that the language of the agreement saying we will supplement
16  this letter is an express agreement.  I understand people may
17  disagree with that.  That's our position.
18        Our secondary position is that it is at least evidence
19  of an implied reservation of a right.
20        THE COURT:  Well, let's go on.
21        The second factor is whether there has been partial
22  performance of the contract.  I would say that maybe does favor
23  you.
24        But the third factor is whether all terms of the
25  alleged contract have been agreed upon.  I think it is

self-evident from what you were arguing as to the first factor that that was not necessarily the case.

And the fourth factor is whether the agreement at issue is the type of contract that is usually committed to writing. That one I think maybe favors you.

So it looks to me like it's a two-two split. This is a motion to dismiss.

MR. LaVIGNE: Your Honor, it is our view that the first and last factor in this case substantially overlap, the same reasons that this document would normally -- this sort of agreement purportedly for millions of dollars, that is open-ended, as plaintiffs allege was due to be paid to him December yearly, regardless of his continued employment, something of that nature, that length, and that immense amount of money would be put into writing. The fact that the standard employment contracts in this case, indeed the offer letter is in writing and indicates that the supplement to this letter also would be in writing.

THE COURT: All right. So is there anything else that you wanted to add?

MR. LaVIGNE: Yes, your Honor.

THE COURT: Go ahead.

MR. LaVIGNE: The whole rebuttal to our motion to dismiss is premised on the idea that *Winston* does not apply to these cases. It is our view that it does. Substantively, our

1  arguments go fully unrebutted in this case.  Plaintiffs'
2  response in their opposition was simply that --
3          THE COURT:  Is it not the law -- I want to go back to
4  my original point.  Is it not the law of the Second Circuit
5  that whether or not a particular allegation or statement of
6  fact or attached document from a moving party in a 12(b)(6)
7  motion is or is not rebutted by the plaintiff, the court has an
8  independent obligation to exclude from its consideration
9  anything that is not properly before it on a 12(b)(6) motion.
10 Is that not the law of the Second Circuit?
11         MR. LaVIGNE:  That is the law.  It is also the case
12 that it is within your Honor's discretion to turn this into a
13 motion for summary judgment.
14         THE COURT:  That's a different question.
15         MR. LaVIGNE:  It is, yes.
16         But to your first point, it is perfectly fine, in our
17 view, were you to strike or to exclude the sections of
18 Ms. Merkadeau's affidavit, that our statements of fact that
19 have not had a chance to be rebutted by plaintiffs through
20 deposition or what have you and simply rely on the documents we
21 attach, which we do believe, under a separate standard, are
22 integral to the complaint and capable of being reviewed at this
23 motion to dismiss stage, those clearly show that any settlement
24 agreement, the terms have not yet been agreed to.
25         THE COURT:  All right.  Thank you very much.  Let me

1     hear from plaintiff's counsel.

2              MR. SILVER:  Your Honor kind of stole some of my
3     thunder.

4              I think that one misconception between the briefing
5     here is the settlement agreement, as alleged in the complaint,
6     is the July 17 written offer from Mr. Powell to the plaintiff,
7     which specifically concludes with a statement, "Our offer
8     stands and is good until Friday 6 p.m. Pacific.  Take it or
9     leave it.  It will not be negotiated or discussed further."

10             What counsel has done through the motion to dismiss,
11    has attached all these extraneous documents about a separate
12    agreement, the settlement agreement, the actual written terms,
13    which nobody agreed to.  The allegation in the complaint is
14    that there was a contract formulated by that e-mail, which was
15    then accepted by the plaintiff, and that's the settlement
16    agreement, not the document that was never -- that had nothing
17    to do -- had terms -- I mean, if we go to Ms. Merckadeau, I'm
18    going to take her at her word in her supplemental affidavit
19    where she says it was critically important that -- I mean,
20    Ms. Merckadeau may dislike what they said, but Ms. Merckadeau
21    said it -- I'm just looking for quote.  She said that there
22    were several terms included -- that included specific material
23    terms such as a confidentiality provision, a merger clause,
24    representations and warranties.  As the e-mails even they
25    attached to their reply brief, which, your Honor, I have never

seen documents attached to a reply brief, and if you would like, I guess I would have to file a motion for a surreply to contradict the demonstrably false affidavit and the demonstrably false statements made in the reply brief documents, which have no place, as your Honor has already pointed out.

But my entire thing is, Judge, we have two agreements here. We have what the CEO offered, said, and I quote "take it or leave it, it will not be negotiated or discussed further." There is no -- and I am quoting from their motion at page 5 now, "When you apply *Winston* factors and considering the strong presumption against finding binding obligation agreements which include open terms, call for future approvals, and expressly anticipate future preparation and execution of contract documents," that's page five of their reply, here there are no open things. Mr. Powell, the CEO of a $9 billion company -- this is not a small fly-by-night company -- with his counsel on the e-mail, puts in his entire offer and says "our offer stands." and I can read you the whole e-mail. It is attached to their supplement reply brief under, I believe, appendix -- Exhibit A. It might be C. I apologize. I think it is actually -- it is page 11 of Exhibit A of the Merckadeau. I have a copy of the actual e-mail if your Honor would like to see it.

THE COURT: That's all right. As you inferred from

the questions I put to your adversary, I think the most fundamental problem that I have with the motion made by defense counsel is they threw all sorts of stuff at the court, some of which, in the court's view, was patently improper on a 12(b)(6) motion, other of which was debatable at best, and now they are saying in effect to the court, well, Judge, you undertake to exclude the stuff that we should never have put in. It is your job now. It wasn't our job to make sure that we only presented you with proper arguments and submissions under 12(b)(6). You sort it out; and when you sort it out, we assert you will find enough left to at least rule in our favor under *Winston*. I find that a rather curious approach to the relevant roles of counsel and the court.

But the only other thing that perhaps you might want to comment on is *Winston*.

MR. SILVER: So just commenting on *Winston*, your Honor, I would say that *Winston* -- and I think it is important to note that *Winston* was post-judgment after discovery, so that the *Winston* court was not a motion to dismiss. There is no dispute that there are several cases in the jurisdiction now that use *Winston* when there is a factual basis that does not have any genuine issues of material fact in dispute, like we do here, they can use it. But ultimately *Winston* requires all of the facts to be flushed out. Like the quote I just read you, there was no open terms, there were no -- there was nothing for

debate. Mr. Powell told my client, as alleged in the complaint, on July 17, 2018, "Take it or leave it. It will not be negotiated or discussed further."

And, by the way, in their motion, they say that the CEO accepted our number. That's not true. On page -- they say in their reply brief, on page one, that "...Payward's analysis of two of the *Winston* factors, and instead implausibly argues that the settlement was final the minute Payward's CEO allegedly agreed to plaintiff's price." Well, that's not true, as the e-mails they attached and as alleged directly in the complaint, the actual chronology here was that the plaintiff made a $2 million demand, said you owe me $2 million, Mr. Powell, the CEO of the company, intervened and says, We will give you 907,000 plus change. That's July 17, of which we respond back and say, okay. That's it. That's what we were alleging is the agreement. So there were no open terms.

When Ms. Merkadeau then attempts to do the other agreements, no one agrees and it falls by the wayside. So we are alleging that is the contract formation. That's what our complaint alleges, and we think it is clear that, even under the *Winston* factors, we are allowed to proceed.

And just based on what they have done through these pleadings, we do have an intent to amend the complaint based on the scheduling order that we anticipate being followed, adding a promissory estoppel case and a breach of good faith and fair

dealing because we believe -- and as counsel said, which I find very odd, if we wanted to settle the case, I will say in open court right now, we will take the 907,000, give them the confidentiality, and end this case. I'm stunned to hear that they won't take that. So I will state it in open court. My client is prepared to accept the terms. Not the terms Ms. Merckadeau tried to add after the fact, but the terms of what the CEO offered us. And if we could do that, this case is over.

So I will leave it at that, your Honor.

THE COURT: Okay. I will hear finally from defense counsel in rebuttal.

MR. LaVIGNE: And I think we just got to the nut of our client's view of this case. I didn't stand up here and say we would take that settlement offer. I said if the plaintiff wanted to, he could have continued and should have continued finalizing settlement negotiations. Mr. Silver here was not plaintiff's counsel at that time. Plaintiff had engaged counsel. We, my client knew that there was a threatened lawsuit. There was a whole bunch of negotiations that went around plaintiff's termination in this case. They came to a number not with the CEO, in fact with the CFO of the company. There is documentary evidence trying to calculate all this back-and-forth between plaintiff and the CFO trying to come to a number. They came to a number, but that number was never

confirmed by Ms. Merkadeau.  And this is partly why this affidavit ended up -- or declaration ended up in this case, because allegations were made that Ms. Merkadeau confirmed this number in writing.  She never did.  There was never any confirmation of this number.  It was all contingent on confidentiality provisions --

      THE COURT:  Forgive me for interrupting, but I come back again, if you could bring a 12(b)(6) motion for the purpose of saying, you know, what they say in their complaint we think is untrue and here is our declaration, not to mention all the things you are now mentioning in court, that refutes that, and therefore you have to dismiss, that would be the world's weirdest 12(b)(6) motion practice.

      Of course in, what, 90 percent of the cases that come before me, the defendant believes that some or all of the allegations of the complaint are untrue.  That's not a basis for a 12(b)(6) motion.  I have to take on a 12(b)(6) motion all properly pled allegations as true, and then of course you get your chance on summary judgment or a trial to show that they are false.

      So I am going to deny the motion.

      Let's turn to the case management plan.

      So this is a jury trial.

      The joinder of additional parties must be accomplished by June 14; the amended pleadings by June 21.  That's all fine.

|  |  |
|---|---|
| 1 | Then we get to first request for production of |
| 2 | documents, and you guys have June 28.  What were you planning |
| 3 | to do between today, June 3, and June 28?  There is no |
| 4 | question, as the motion practice already shows, that both of |
| 5 | you know at least some of the documents you want from the other |
| 6 | side, and this is just the first request for documents on the |
| 7 | face of the form that I gave you.  It doesn't preclude later |
| 8 | requests, all the way up to 30 days prior to the close of |
| 9 | discovery. |
| 10 | So why should we wait around until June 28?  I'm going |
| 11 | to change that date for the first request for documents to June |
| 12 | 10. |
| 13 | MR. SILVER:  Your Honor, could I ask a procedural |
| 14 | question? |
| 15 | THE COURT:  Yes. |
| 16 | MR. SILVER:  Should I stand or can I do it from the |
| 17 | table? |
| 18 | THE COURT:  I'm sorry? |
| 19 | MR. SILVER:  Should I stand? |
| 20 | THE COURT:  It's okay. |
| 21 | MR. SILVER:  I will tell you the reason we did it, I |
| 22 | just wanted to make sure it was after the amended complaint. |
| 23 | THE COURT:  Why does that matter?  You can't show me |
| 24 | any law that says it has to be after the amended complaint. |
| 25 | MR. SILVER:  No.  I was just -- |

1          THE COURT:  Because there is no law.

2          MR. SILVER:  I'm just saying our thinking.  That's
3   fine with me.

4          THE COURT:  I appreciate your thinking, but it is not
5   accurate.

6          And then even more so, I could not understand why you
7   had limited the very -- excuse me, where you had scheduled the
8   very limited interrogatories permitted by local rule 33.3(a),
9   which are the only interrogatories that I permit, for July 3.
10  If you looked at Local Rule 33.3(a), and I hope you did, you
11  would see it would take you, at most, five minutes to draft
12  those interrogatories.  Basically they ask for things like
13  persons with knowledge about the underlying allegations.  So
14  I'm going to put that down for June 10 as well.

15         Then we come to depositions.  Before we get to expert
16  depositions, what other depositions approximately -- you don't
17  have to give me a binding commitment -- but approximately how
18  many depositions does plaintiff contemplate taking?

19         MR. SILVER:  Three to five.

20         THE COURT:  Five.

21         And how about defense counsel?

22         MR. LaVIGNE:  Three.

23         THE COURT:  Okay.  So I would think that all
24  depositions could be completed by September 9.

25         Requests to admit, August 2 is your proposal.  That's

1    fine.
2         All discovery, then, to be completed by September 9.
3         Going back, then, to experts, what kind of expert does
4    the plaintiff have in mind?
5         MR. SILVER:  There will be an accounting expert, one
6    of the debates philosophically is how much my client was
7    entitled to based on the profit.  There are two Excel
8    spreadsheet that is show a different accounting, so it would be
9    an accounting expert.
10        THE COURT:  Okay.  So I think that expert's report and
11   other disclosures needs to be made by August 2 and responding
12   expert disclosures by August 16.
13        Moving papers on any summary judgment motion September
14   23, answering papers October 7, and reply papers October 14.
15        We will have a final pretrial conference, as well as
16   oral argument on any summary judgment motion, let's look at
17   October 21.
18        THE DEPUTY CLERK:  You are sitting in Seattle.
19        THE COURT:  So let's do it October 18.
20        THE DEPUTY CLERK:  Any time you would like.
21        THE COURT:  4 p.m.
22        So I originally wanted this case ready for trial by
23   October 3.  We had this intervening motion practice, so now it
24   must be ready for trial by October 18.  When we have the final
25   pretrial conference, we will set the actual trial date then, if

J632silA

1   summary judgment does not dispose of the case.

2         So I have signed the case management plan. It will be

3   filed electronically, and therefore available to both sides.

4         Is there anything else we need to take up today?

5         MR. SILVER:  I don't believe so, your Honor.

6         THE COURT:  Anything for defendant?

7         MR. LaVIGNE:  Just that, your Honor, I have proposed a

8   protective order in the case to contemplate to cover any

9   discovery.  I have sent it to my co-counsel.  We are still --

10        THE COURT:  That's fine.  As long as it conforms to my

11   model form, I will be happy to sign it.

12        MR. LaVIGNE:  Okay.

13        THE COURT:  Very good.  Okay.  Thanks very much.

14                         oOo

15

16

17

18

19

20

21

22

23

24

25